# BRUMBAUGH v. WILSON.

## Patent Appeal No. 4642.

Court of Customs and Patent Appeals.

Feb. 1, 1943.

J. Ralph Barrow, of Akron, Ohio (Robert W. Wilson, of Cleveland, Ohio, of counsel), for appellant.

E. L. Greenewald, R. S. Nelson and E. P. Boynton, all of New York City (Clair V. Johnson and David A. Woodcock, both of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Interference Examiners of the United States Patent Office in a patent interference proceeding in which Brumbaugh, the junior party, has appealed from the decision of the board awarding priority of invention of the two article counts involved to the senior party, Wilson.

The counts correspond to two claims in Brumbaugh's patent issued October 24, 1939, upon an application filed May 17, 1939. This application purports to be, in part, a continuation of an application filed August 20, 1937, which became abandoned on May 17, 1939, through the failure of Brumbaugh to respond to the rejection dated November 17, 1938. The interference, therefore, is between the claims of the Brumbaugh patent which correspond to the involved counts and the application of Wilson filed December 31, 1938 (into which the Brumbaugh claims were copied) which is a continuation-in-part of an earlier application of Wilson filed October 22, 1936. The applications of Brumbaugh and Wilson were copending. Brumbaugh, being the junior party, was under the burden of proving his priority by a preponderance of the evidence.

The counts of the interference read as follows:

"1. A wax composition comprising an emulsion of wax in water having therein as an emulsifying agent a morpholine compound with a fatty acid of high molecular weight, holding the wax dispersed in such small particle size that it will dry bright or with substantial lustre when merely applied to a surface and exposed to the atmosphere without rubbing, said emulsifying agent being decomposable by drying of the composition whereby the composition loses its ability to re-emulsify in the presence of water.

"2. A wax composition comprising an emulsion of wax in water having therein as an emulsifying agent an unstable volatile amino compound with a fatty acid of high molecular weight, forming a wax-soluble soap, so as to hold the wax dispersed in such small particle size that it will dry bright or with substantial lustre when merely applied to a surface and exposed to the atmosphere without rubbing, said emulsifying agent being stable in the presence of the water and not evaporating selectively in water solution but decomposable by the drying of the composition whereby the composition loses its ability to re-emulsify in the presence of water."

It is to be noticed that the counts are drawn to the composition and that the method involved is not under consideration here.

The Brumbaugh patent is assigned to the Universal Chemical Corporation (hereafter referred to as Universal), manufacturers of floor finishes and other products. In the fall of 1932 Universal employed Mr. Brumbaugh as a chemist. In the fall of 1933 Brumbaugh formed a company known as the Chemical Products Company and ceased working for Universal soon thereafter. In September 1936 Universal bought Brumbaugh's Chemical Products Company, including about four pounds of morpholine, and rehired Mr. Brumbaugh as chemist.

At the time of taking proof and long prior thereto, Wilson was employed by the Organic Synthesis Industrial Fellowship maintained at the Mellon Institute, Pittsburgh, Pennsylvania, by the Carbide & Carbon Chemicals Corporation, which owns the Wilson application, said corporation being a manufacturer of chemicals and, as pertinent here, a manufacturer of triethanolamine, used for making wax-in-water emulsions, and morpholine or equivalent amino compounds, which are furnished to certain manufacturers for the purpose of making wax compounds which are bright-drying, waterproof, and require no buffing after application.

Originally, the interference proceeding included one Anton E. Budner, whose application was owned by S. C. Johnson & Son, Inc., manufacturers of floor waxes, etc. Subsequent to the taking of testimony, Budner conceded priority to Wilson, to which Johnson assented, and Budner was thereafter eliminated as a party herein.

After the elimination of Budner, Brumbaugh moved that the Budner proof be made a part of the record. This motion was granted by a single Examiner of Interferences for the purpose of consideration at final hearing, and the Budner testimony was in the record before the Board of Interference Examiners and is in the record at bar.

182

The invention defined by the involved counts relates to a wax composition or polish in the form of an emulsion which is water-resistant and produces a lustrous, glossy finish without rubbing. An important feature of both counts is that requiring the holding of the wax "dispersed in such small particle size that it will·dry bright or with substantial lustre when merely applied to a surface and exposed to the atmosphere without rubbing." Said wax is produced by the use of a morpholine compound (in count 1) and an unstable volatile amino compound (in the broader count 2). It is compounded with fatty acids of high molecular weight, such as oleic acid, and a suitable wax material. The wax and the oleic acid are melted, and the emulsion is formed by the addition of water at stated temperatures.

Prior to this invention, there were wax-in-water emulsions which were represented as bright-drying and self-lustering, but they did not give satisfactory results for the reason that when water came in contact with the wax-polished floor, emulsification again set in, the wax would rub off, and spots of discoloration would be left on the floor. Moreover, particles in the emulsion were too large, and streaking resulted. In making such wax compositions, the emulsifying agents employed included triethanolamine or alkali metal soaps. By the use of morpholine or its derivatives, a lustering wax was produced which was highly resistant to both hot and cold water. The chemical reaction said to take place was one that gave a "fine particle size in such a way that the film would not be re-emulsifiable in the presence of water."

Appellant raises a number of issues. We think it sufficient to state and comment upon but five of them. He contends:

1. That the interference should have been dissolved on the ground that the Wilson application does not contain a sufficient disclosure to satisfy the requirements of R.S. § 4888, 35 U.S.C.A. § 33, with respect to the preparation of the wax composition defined in the counts; 2. that the method disclosed in said Wilson application is inoperative; 3. that Wilson derived the invention from Brumbaugh; 4. that Wilson has not proved priority of invention but that Brumbaugh has; and 5. that there was fraud and collusion between Wilson and Budner.

On the last contention appellant urges that since the record clearly shows collusion and fraud upon the part of Wilson and Budner, the whole record of Wilson must be rejected as failing to prove Wilson's priority, on the doctrine of falsus in uno, falsus in omnibus.

The board held first, that upon the record Wilson had clearly proved his priority of invention defined by the counts and that Brumbaugh had failed to do so; second, that the record satisfactorily established that Wilson's disclosure is sufficient and operative; third, that Brumbaugh derived from Wilson the invention set forth by the counts and that as to the subject matter defined by the counts Brumbaugh was not an original inventor; fourth, that the Budner record was not pertinent evidence in determining the issue involved and was therefore rejected; and fifth, that the record disclosed no fraud and collusion to defeat the right of the party Wilson to prevail.

We have examined all the evidence (including that in the Budner record), which comprises, among other things, correspondence between Wilson (or those working under his directions) and the appellant Brumbaugh and between Wilson and other parties concerned with other manufacturing companies, such as S. C. Johnson & Son, Inc., and Wilbert Products Company. Said correspondence had reference to the use and manner of use of morpholine and its derivatives in making waxes and polishes, including no-rub floor wax. The record comprises, in testimony, exhibits, and other pertinent matter, nearly 1,500 pages. Numerous documentary and other exhibits were introduced by the parties on both sides, some going to the question of priority and also bearing upon the question of originality. We feel that it is necessary to refer to only a few of these documents and exhibits and will do so later herein.

We first give consideration to the question of originality. The board has passed directly on that question, and its action is here challenged by Brumbaugh. Appellant's exhibits N-1 to N-24, we think, conclusively show that Brumbaugh, while working with the problem of producing a shining, self-polishing wax by using triethanolamine in the formula, frequently counseled with Wilkes and other associates of Wilson, who worked under

Wilson's direction, throughout the period from December 1935 to May 1937.

■■■ Brumbaugh contends that he disclosed the invention to Wilson's associate, Wilkes. We find no satisfactory proof of this contention. On the contrary, we think the information on the critical thing in this invention, i. e., the use of morpholine or its derivatives, came from Wilson. Brumbaugh says that he told Wilkes, while at the Mellon Institute, that he felt that there "was a need for an emulsifying agent that would sort of volatilize and decompose." This seems to be as near a suggestion of the invention at bar as is contained in any of Brumbaugh's testimony. This, we think, was a suggestion of the problem without any suggestion of a remedy. Davis v. Carrier, 23 C.C.P.A.,Patents, 844, 81 F.2d 250.

Subsequent to that date, Brumbaugh, in a letter to Wilkes dated February 10, 1936 (Brumbaugh alleged conception of the invention "in February of 1936"), had the following to say:

"Since my interview with you several months ago we have experienced no further difficulties in the production of our water emulsion floor wax.

"Our one outstanding weakness to date in this product is a lack of sufficient water resistance. The sample you gave me is certainly far superior in this respect to our own product and I am very much interested in the use of Morpholineoleate as the emulsifying agent.

"Please advise as to whether this amine is yet available and if so in what quantity and the cost; also if possible any pertinent points in the process as it differs from the use of Triethanolamine.

"We feel it necessary to make a change and prefer to obtain the amine from you rather than to attempt to manufacture it ourselves or to use ammonia.

"Thanking you for your kind co-operation in the past, we remain * * *."

On March 15, 1937, long after the filing of the original Wilson application, Brumbaugh wrote Wilkes, in substance, that since his interview with Wilkes on the previous Tuesday he had made further runs on bright-drying floor waxes; that the results had been better than previously; that he had used the formula in Wilson's booklet, "Emulsions," and got a "very lovely product." This experiment involved triethanolamine. In said letter he also stated that he had made a run with morpholine (12 gallons). He said that with morpholine he got a wax with very minute particles, which was not entirely satisfactory. He emphasized the fact that he had used a low wax content. The record shows that Wilkes had advised him not to do that. Brumbaugh claims later to have made a success of this experiment, but the record shows that in doing so he used substantially the amount of wax that he had been told by Wilkes to use.

On March 24, 1937, Brumbaugh wrote Wilkes as follows:

"I have your letter of March 23 with the further information on the morpholine wax polish relative to uneven drying.

"We have noted that the tendency to creep is less pronounced after the shellac has been added, and believe as you suggest that with this addition and when the wax is aged, and through perhaps a slightly higher wax concentration that we will have a satisfactory product in this regard.

"I wish to express again my appreciation for all your valuable suggestions and helps and will drop you a line occasionally to let you know how we are making out with these products. At present we are delayed just a little because of the difficulty of obtaining an additional supply of Morpholine, but will continue in the near future when it arrives."

It should be remembered that Wilkes, the associate of Wilson, worked for and represented the Carbide & Carbon Chemicals Corporation through his employment at the said Mellon Institute. The Carbide Company manufactured and sold to wax manufacturers certain chemicals going into the making of said waxes. Other circumstances going to the question of derivation of the invention by Brumbaugh from Wilson might be recounted, but we think it unnecessary to lengthen this opinion unduly by further recital of the facts.

We are not in disagreement with the holding of the board that Brumbaugh derived the invention from Wilson, and, as we have no doubt on this question, it might be sufficient to base our decision wholly upon the question of originality without further discussion of the numerous other issues or questions involved, but since appellant has so vigorously pressed the alleged error on the part of the board in its finding of priority upon the record and has urged here and elsewhere that fraud and collusion between Wilson and

Budner has been conclusively shown, we think it important to recite and discuss somewhat briefly the various facts and circumstances relating thereto.

 We have examined the Brumbaugh proofs, some of which we have hereinbefore alluded to, and find no showing that he was ever in possession of the involved invention prior to the filing date of Wilson's original application. Moreover, Brumbaugh is confined to the period covered by his preliminary statement, and he has alleged no date for conception prior to February 1936. The board has analyzed this evidence in great detail, and a review of the same would not be helpful here. We agree with the board's conclusions.

On the question of inoperativeness of the Wilson disclosure, it is argued by appellant that notwithstanding the fact that the Wilson application discloses a composition responding to the counts involved, it does not comply with the statute in that it fails to teach a method which will produce the composition defined by the counts. On this phase of the case Brumbaugh urges that a disclosure of the ingredients used, without disclosing the particular "technique" involved in the compounding of the same, amounts to no disclosure such as required by the statute. He emphasizes that his process (not defined in the counts but set out in his patent) teaches a manner of production of the composition in which there are certain critical steps not disclosed by Wilson. Brumbaugh recites in his patent application, after referring to the heating, mixing, and agitating of the morpholine, the following: "* * * Six gallons of boiling water are then added at a slow regular rate over a period of about three minutes, agitating continuously as above and for approximately five minutes thereafter. *The remainder of the water at boiling temperature is then added very rapidly (in about 10 seconds)* and stirring is continued until the emulsion is homogeneous and none of the concentrated emulsion mixture remains undispersed." [Italics ours.]

Apparently it is urged by Brumbaugh that the sudden addition of the remaining water, after the first has been added slowly, "shocks" the mixture and that this is the gist of the invention. The Wilson applications say nothing about shocking the mixture. In his original application of October 22, 1936, Wilson teaches the use of morpholine and substitution products in producing the emulsion here involved and gives an example as follows:

Example III

| Part 1. | | Part 2. | |
|---|---|---|---|
| Carnauba wax | 72 | Shellac | 10 |
| Oleic acid | 12.3 | Morpholine | 1.1 |
| Morpholine | 14.4 | Water | 100 |
| Water | 430 | | |

He then states: "The carnauba wax was carefully melted, and the oleic acid followed by the morpholine, slowly stirred in, to give a clear solution. Then water at the boiling point was slowly added with continuous stirring, the whole product being maintained hot over a steam bath. To this product on cooling was added a solution made by warming together the shellac, morpholine, and water of the second part of the formula. When laid as a film on glass, after one hour's standing, a bright polish was obtained, which became only slightly cloudy when sprinkled with water. A corresponding film deposited from an emulsion made by means of a triethanolamine soap completely disintegrated when sprinkled with water. After drying twelve hours, the morpholine polish showed no cloudiness when immersed in water. The films were very clear and lustrous, and no buffing was required. If desired, part of the morpholine in the formula may be replaced by borax, but I have found by experiment that such a change produces a polish exhibiting less water-resistance in the dried film."

Other examples are given, but no mention is made of any sudden pouring of water which is designed to shock the mixture. In Wilson's application involved here (into which the Brumbaugh claims were copied) the table of Example III and the descriptive subject matter following the same is substantially identical with that in the original application.

It is argued by Brumbaugh that he has proved by tests which he made, by tests which were made independently, and by inter partes tests that the Wilson disclosure affords no basis for the production of the wax called for by the counts in so far as it takes no cognizance of the "shocking" step.

 It will be observed again that the invention defined by the counts is not

concerned with the method of producing the composition. It is true, of course, that the law requires the inventor of a composition to teach the manner of its production. We think the disclosure of Wilson complies with this requirement, and that appellant has failed to show by the tests to which he refers that one following the Wilson teachings would not produce a composition such as is defined by the involved counts.

Even if it be conceded that appellant's so-called technique may have advantages over that disclosed in the Wilson applications, it cannot be said that Wilson fails to show how a product responding to the counts can be made. Wilson's record discloses that such a product was produced— a composition which responds to the terminology of the counts in so far as it dries bright with *substantial lustre* when merely applied to a surface and exposed to the atmosphere without rubbing. Unquestionably, his product dries with *substantial* brightness and lustre. He was the first to teach the use of morpholine or its derivatives, and, the counts not being limited to the so-called technique, we think the Patent Office tribunal properly held that Wilson was the first inventor of the subject matter of the counts and that his disclosure was not subject to the charge of inoperativeness.

Appellant has urged that the inter partes tests made by Wilson or his subordinates show unsatisfactory results and that the tests he made or caused to be made show conclusively that in following the Wilson formula the wax defined by the counts was not produced. Much has been said about the appearance of the panels upon which the results of these tests appear. Regardless of what may be said about some panels introduced in evidence being more lustrous than others and freer from spots and streaks, we are in agreement with the board that the Wilson tests as well as the other tests referred to by appellant produced a wax with substantial lustre and met the requirements of the counts.

■ Appellant criticized the board for not commenting upon the admission he states Wilson made at final hearing that a certain Exhibit W, a wax produced in inter partes tests in which Brumbaugh purportedly followed Example III of the Wilson application, was not "commercial." This subject matter was presented in a

petition filed by Brumbaugh with the Commissioner of Patents to set aside the board's decision and grant a new final hearing, which petition was withdrawn with the statement that it was done without prejudice to the presentation of the matter on appeal here. Assuming that the subject matter is properly in the record— a question which we do not need to decide—it is too obvious to require comment that if it were conceded that this admission was made by Wilson, it would not be conclusive in the premises.

Obviously, after Budner had conceded priority, as aforesaid, it was the view of Brumbaugh that Budner's proof, if admitted to the record, would have a bearing upon the question of originality and the question of collusion and fraud. He states, in substance, that if Wilson has made a case, the record of Budner must be used for the purpose of making the same. The Budner record was included in the instant record upon the motion of Brumbaugh and without objection by Wilson. It shows that Budner conceded that Wilson wrote him while he was working for the Johnson Company telling him how to make the kind of wax called for by the counts and that he followed the instructions and made it. Budner had been receiving instructions from Wilson while the latter was working with Dr. Wilkes and others at the Mellon Institute, and it seems that Wilson had sent the same kind of instructions to a number of experimenting chemists who were engaged in trying to produce a shining, waterproof wax which required no rubbing.

Among the many other circumstances which brought it to the conclusion that Wilson had successfully proved his priority of the invention defined by the counts, the board referred to Exhibits N-5, 6, 40, and 40a. The first of these exhibits contains instructions sent out to Brumbaugh by Wilkes, and the second, No. 6, is identical with those sent to others who manufactured wax according to the directions therein contained. Exhibit 40 is a letter to S. C. Johnson & Son, Inc., containing the same instructions as those in the first two exhibits; and Exhibit 40a is a letter written to the Wilbert Products Company, containing the same formula and instructions for making emulsion polishes with the use of morphine as had been sent to the other parties. Exhibits N-5 and 6 bear the date, January 3, 1936, while the

other two exhibits bear dates in the early part of 1935. The board has called attention to the fact that the disclosure in these four exhibits is substantially identical with Example III of Wilson's application. There is satisfactory proof in the record which shows that when the directions in the formula in said exhibits were followed, satisfactory results were obtained, and that a shining, self-polishing, waterproof wax was produced.

The board considered the effect of the established rules of equity jurisprudence on the admissibility of the Budner proof urged by Brumbaugh and the bearing of the pertinent rules of the Patent Office thereon and held first, that the testimony was incompetent and irrelevant; and second, that it deemed it not properly a part of the record at final hearing. It also stated: "In conclusion it may be observed that, assuming the Budner testimony to be admissible, taken alone or in conjunction with the other evidence nothing is found therein of such significance as to defeat the right of the party Wilson to prevail. Hence, regardless of whether or not the Budner depositions be considered, the record is not deemed to establish or even to suggest such impropriety of action by or on behalf of Wilson as to warrant a holding of fraud and collusion on his part as charged by his adversary."

On this phase of the case it is urged by Brumbaugh that in view of the fact that Budner was an employee of the Johnson Company, which purchased some of its chemicals used in manufacturing waxes from Wilson's company (the Carbide Company), and of the fact that Budner conceded priority to Wilson, and of the further fact that Budner and Wilson and their counsel evidently met and talked the matter over before the taking of testimony for Budner at the Johnson plant in Racine, Wisconsin, it should be held that there was fraud and collusion between them.

Without expressing any opinion as to the admissibility of the Budner record, which was thoroughly discussed by the board, we agree with the board that nothing is contained therein, or, for that matter, in the record as a whole, which would warrant a holding of fraud and collusion between Wilson and Budner or their attorneys, or justify such a conclusion as is contended for by appellant.

We have examined the Wilson application, parts of which we have quoted hereinbefore. We think it is not subject to the criticism of appellant that it is not a sufficient compliance with the statutory requirements to justify the issuance of a valid patent. It seems to us that the application is quite full and complete as to the manner of compounding the wax emulsion which is the subject-matter defined by the counts.

We have carefully examined all the many reasons of appeal noted by appellant, some of which go to the specific wording of the holding of the Board of Interference Examiners and some of which are long and argumentative. We regard many of them as being without sufficient merit to justify any discussion here.

It is therefore our conclusion first, that Wilson's application is sufficient disclosure to satisfy the requirements of R.S. § 4888, 35 U.S.C.A. § 33; second, that the record shows that the disclosures of the applications of Wilson are not inoperative; third, that Brumbaugh obtained the invention defined by the counts through information furnished by Wilson or his associates or subordinates; fourth, that Brumbaugh has failed to carry his burden of proving, by a preponderance of the evidence, his priority of invention of the counts, and that the record sustains the finding of the board that Wilson is the prior inventor of the subject-matter of the counts (the board has discussed the record on priority, which embraced the exhibits of the parties, tests made by each of them, including inter partes tests, and other pertinent matters, at unusual length, and we agree with its holding and conclusions as to the same); and fifth, that there is no fraud and collusion shown on the part of Wilson and Budner or their attorneys justifying awarding priority of the invention of the counts to the party Brumbaugh.

Upon the foregoing holdings, we conclude that the board arrived at the right conclusion, and its decision is affirmed.

Affirmed.